**WESTERWALD POTTERY CORP., Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (WATTERS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 7, 1997.

Decided April 21, 1997.

---

Kenneth Ficerai, Greensburg, for petitioner.

No appearance entered for respondent.

Before FRIEDMAN and LEADBETTER, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

Westerwald Pottery Corporation (Employer) appeals from an order of the Workmen's Compensation Appeal Board (WCAB) affirming the decision of a Workers' Compensation Judge (WCJ) to deny the suspension and modification petitions filed by Employer. We vacate and remand.

On March 8, 1992, Rogenna Watters (Claimant) sustained a work-related injury to her right shoulder. However, Claimant continued to work for Employer in a light duty capacity, receiving workers' compensation benefits for partial disability pursuant to a Notice of Compensation Payable. (WCJ's Findings of Fact, Nos. 1, 7.)

In June 1992, Claimant missed work in order to undergo surgery on her right shoulder; during that time, Claimant received total disability benefits. (WCJ's Finding of Fact, No. 2.) In October 1992, Claimant returned to work in a modified duty capacity but was unable to perform her job duties. As a result, Claimant once again received total disability benefits. (WCJ's Finding of Fact, No. 3.)

In January 1993, Claimant was seen by Jon B. Tucker, M.D., who performed surgery on Claimant's right shoulder. Although this surgery improved the function in Claimant's shoulder, Claimant continued to experience severe pain, especially when she used her right arm above shoulder level. (WCJ's Finding of Fact, No. 4.)

In December 1993, Employer hired Genex, a vocational rehabilitation firm, to find suitable work for Claimant. Over several months, Genex sent Claimant numerous job referrals for positions which were supposedly within Claimant's physical restrictions. (WCJ's Finding of Fact, No. 13.)

On April 4, 1994, Employer filed a suspension petition alleging that, as of March 28, 1994, Claimant failed to follow through in good faith on a job referral at Sears Roebuck & Company (Sears). Claimant filed an answer denying the material allegations of the petition. On May 12, 1994, Employer filed an amended petition alleging that Claimant's benefits should be suspended or modified

because, as of April 27, 1994, Claimant failed to follow through in good faith on a job referral at Sears.[1] On November 9, 1994, Employer orally amended its petition to allege that Claimant failed to follow through in good faith on several other job referrals. (WCJ's Findings of Fact, Nos. 7–9, 12; R.R. at 68a69a.) Hearings were held before a WCJ.

At the hearings, Claimant testified regarding the various job referrals.[2] With respect to those which are at issue here,[3] Claimant testified that she: (1) presented herself for an interview with Sally's Beauty Supply (Sally's) and gave the proprietor a copy of Dr. Tucker's physical capacities checklist, but was not offered a job; (2) filled out a written application for a hostess position with Applebee's Restaurant (Applebee's), stating a preference for $12.00 per hour, but was not offered employment;[4] (3) applied at Sears for a job as inside credit solicitor and was offered the job, but turned it down because the travel distance and commute time were too great for the number of hours and rate of pay;[5] and (4) applied for a job with Gingiss, a formal wear and tuxedo rental store, but turned down an interview opportunity because the travel distance was too great for the number of hours and rate of pay.[6] (WCJ's Finding of Fact, No. 14.)

Employer presented the deposition testimony of Carol Bleier, a vocational counselor from Genex who provided job placement services in this case. Bleier testified, in relevant part, that Claimant: (1) was not offered the job at Sally's; (2) applied for the hostess position at Applebee's 19 days after notice was sent to her;[7] (3) turned down a job offer with Sears because the 25-mile distance between Sears and Claimant's home was too far to travel for the rate of pay;[8] and (4) applied for the job at Gingiss but refused an interview because the 33-mile commute was too far for the rate of pay.[9] (WCJ's Findings of Fact, Nos. 15–16, 18.)

Upon consideration of the evidence presented, the WCJ accepted Claimant's testi-

---

1. The WCJ treated the original petition and the amended petition to suspend and modify as three separate petitions and consolidated them for disposition. (WCJ's Findings of Fact, Nos. 9–10.)

2. Claimant also presented the deposition testimony of Phil Schaltenbrand, Employer's owner, who testified that, in October 1992, he offered Claimant a light duty position in Employer's shipping department. However, Claimant turned down the offer and asked to return to her regular department. Employer allowed Claimant to do so, but, after approximately a week, it was apparent that Claimant could not perform her job duties. Employer then returned Claimant to total disability status. (WCJ's Finding of Fact, No. 19.)

3. The WCJ made findings with respect to fifteen job referrals. (WCJ's Finding of Fact, No. 14.) However, only four of those job referrals are at issue here.

4. Claimant had been paid $12.00 per hour in her pre-injury job. (WCJ's Finding of Fact, No. 14(c).)

5. Sears is located 25 miles from Claimant's home, a 45-minute commute in one direction. The job involved 20–25 hours per week at $4.65 per hour plus commissions based on the number of credit applications obtained. (WCJ's Finding of Fact, No. 14(e).)

6. This job involved 15–39 hours per week, depending on the time of year, and paid $4.50 per hour. Gingiss is located at Century III Mall, 33

miles from Claimant's home, which is a one hour commute. (WCJ's Findings of Fact, Nos. 14(l), 14(n), 16(g).)

7. Employer presented the deposition testimony of John Trone of Applebee's, who stated that, by the time Claimant applied for the job, the hostess position had been filled. Trone also testified that he was "put off" by the fact that Claimant wrote on her job application that she preferred $12.00 per hour. Trone further indicated that Applebee's kept Claimant's application on file for future consideration; however, Applebee's did not consider Claimant for future vacancies because the restaurant was looking for fresh energetic types, and Claimant did not fit that profile. (WCJ's Finding of Fact, No. 26.)

8. Al Vescio, merchandise support manager for Sears, who testified for Employer, stated that Claimant informally applied for the inside credit solicitor position at Sears, and that Vescio invited Claimant to formally apply for the job. However, Claimant declined to do so because the job did not pay well enough considering its distance from her home and because Claimant was having trouble making suitable baby-sitting arrangements for her children. (WCJ's Finding of Fact, No. 25.)

9. Dr. Tucker testified for Employer that Claimant was physically capable of performing these four jobs. (WCJ's Finding of Fact, No. 21.)

mony and found that: (1) Claimant applied in good faith for the job with Sally's, but she received no job offer; (2) the job with Applebee's was not available to Claimant because Claimant was not the type of person that Applebee's was looking to hire; and (3) the jobs with Gingiss and Sears were not available to Claimant because the distance and travel time were too great for the rate of pay and the number of hours involved per week. (WCJ's Findings of Fact, Nos. 30, 32–33.) The WCJ denied Employer's petitions, concluding that Employer failed to show that work was actually available to Claimant which fit the occupational category for which Claimant had been given medical clearance. Employer appealed to the WCAB, which affirmed the WCJ's decision.

■■■■ On appeal to this court,[10] Employer contends that the WCJ erred in determining that the job with Sears was not actually available to Claimant.[11]

■■■ Under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374

(1987),[12] the employer has the burden of showing that, in making a particular job referral, the job is actually available to the claimant:

[ A] position may be found to be actually available, or within the claimant's reach, only if it can be performed by the claimant, having regard to his physical restrictions and limitations, his age, his intellectual capacity, his education, his previous work experience, and other relevant considerations, such as his place of residence.

*Dilkus v. Workmen's Compensation Appeal Board (John F. Martin & Sons)*, 543 Pa. 392, ——, 671 A.2d 1135, 1138 (1996) (quoting *Kachinski* ). The duration of a claimant's commute and the length of the workday are relevant considerations in determining whether a position is actually available to a claimant. *Id.; Goodwill Industries of Pittsburgh v. Workmen's Compensation Appeal Board (Friend)*, 158 Pa.Cmwlth.292, 631 A.2d 794 (1993). However, low pay and commuting expenses are of no moment because the Workers' Compensation Act (Act) [13] provides for partial disability payments based on

---

10. Our scope of review is limited to determining whether constitutional rights have been violated, an error of law committed, or whether necessary findings of fact are supported by substantial evidence. *Iacono v. Workmen's Compensation Appeal Board (Chester Housing Authority)*, 155 Pa. Cmwlth.234, 624 A.2d 814 (1993), *aff'd per curiam*, 536 Pa. 535, 640 A.2d 408 (1994).

11. Employer sets forth the following question for our review:

Whether the [WCAB] erred in affirming the Order of [the WCJ] circulated on June 8, 1995 and in dismissing Petitioner/Employer's Appeal?

(Employer's brief at 3.) Ordinarily, no point will be considered which is not set forth in the statement of question involved or suggested thereby. Pa. R.A.P. 2116(a). Although Employer's statement of the question involved does not raise a specific appealable issue, we will not dismiss Employer's appeal for this technical defect; indeed, the argument portion of Employer's brief gave Claimant ample notice of the nature of Employer's arguments. *Sun Oil Co. v. Workmen's Compensation Appeal Board (Thompson)*, 158 Pa.Cmwlth.434, 631 A.2d 1084 (1993).

In the argument portion of its brief, Employer contends that the WCJ: (1) ignored the fact that Employer offered Claimant a light duty position in its shipping department; (2) erred in concluding that the Gingiss and Sears jobs were not actually available to Claimant; (3) erred in con-

cluding that Claimant followed through in good faith on the Sally's and Applebee's positions; and (4) erred in sustaining Claimant's hearsay objection to certain testimony of Bleier.

We find no merit in many of these arguments. However, we will address the second argument and consider whether the Sears position was within Claimant's geographic area as a matter of law and, thus, was actually available to Claimant.

12. In *Kachinski*, 516 Pa. at 252, 532 A.2d at 380, our supreme court set forth the following procedure:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce evidence of a change in condition.
2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.
3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).
4. If the referral fails to result in a job then the claimant's benefits should continue.

13. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4.

the difference between the earning power of the claimant and the claimant's pre-injury wage. *Dilkus.*

■ In addition to the relevant factors set forth in *Dilkus,* this court has considered whether the claimant has reliable private transportation or accessible public transportation to the positions offered, *DME Company v. Workmen's Compensation Appeal Board (Peters),* 162 Pa.Cmwlth.418, 639 A.2d 869 (1994); *Titusville Hospital v. Workmen's Compensation Appeal Board (Ward),* 122 Pa.Cmwlth.619, 552 A.2d 365 (1989), and whether other persons in the same community would accept employment at a certain location. *Scheib v. Workmen's Compensation Appeal Board (Ames Department Store),* 143 Pa.Cmwlth.193, 598 A.2d 1032 (1991). Ultimately, our inquiry is whether a particular job is appropriate for a reasonable person in the position of the claimant. *Goodwill Industries of Pittsburgh.*

■ Here, the WCJ found that the inside credit solicitor position with Sears was not actually available to Claimant because the job was too far away from Claimant's residence for the rate of pay and the number of hours involved per week. (WCJ's Finding of Fact, No. 32.) First, the rate of pay and the number of hours in a work week are not relevant factors for consideration. In *Dilkus,* our supreme court explained that, under section 306(b) of the Act, 77 P.S. § 512, a claimant who returns to work in a position which pays less than the claimant's pre-injury wage is entitled to partial disability payments based on the difference between the claimant's earnings and the claimant's pre-injury wage. Thus, here, Claimant would have received weekly partial disability benefits to compensate her for the low rate of pay and the part-time work hours.[14]

Second, while the WCJ properly considered the duration of Claimant's commute to Sears, the WCJ made no finding with respect to the length of the workday. In *Dilkus,* our supreme court held that a one hour commute was not unreasonable *for an eight hour workday.* Thus, the duration of a claimant's commute must be considered in light of the claimant's workday.[15]

Third, the WCJ made no finding as to whether Claimant had reliable private transportation or whether a reasonable person in Claimant's community would accept employment at Sears. One could reasonably infer from the record evidence here that Claimant had reliable private transportation.[16] Moreover, the record contains evidence which suggests that it would not be unreasonable for people in Claimant's geographic area to commute to Sears for work.[17]

■ Finally, we note that Claimant's decision to turn down the Sears job was based, in part, on babysitting difficulties, including the cost of babysitting. (R.R. at 98a.) Although the WCJ made no findings in this regard, we do not believe that this failure constitutes an error of law. Claimant testified that: (1) she is married and has two children, six and eight years old, (R.R. at 124a); (2) she paid $4.00 per hour for child care services before her work injury, (R.R. at 98a); and (3) her former babysitters are no longer available because they have gotten jobs, (R.R. at 98a).

14. A claimant receiving partial disability benefits is entitled to two-thirds of the difference between her average weekly wage (AWW) and her earning power. Section 306(b) of the Act, 77 P.S. § 512.

Here, Claimant's average weekly wage is $553.93. (WCJ's Finding of Fact, No. 6.) The Sears position paid $4.65 per hour, plus a $.50 to $1.00 commission for each credit application obtained. (WCJ's Finding of Fact, No. 14(e); R.R. at 369a.) Thus, if Claimant worked 20 hours, she would earn *at least* $93.00. The difference between $553.93, Claimant's AWW, and $93.00 is $460.93. Claimant's partial disability benefits for that week, then, would have been two-thirds of $460.93, or $307.29. Combined with her $93.00 in earnings, Claimant's income would

have been $400.29, which is $31.00 more than Claimant's $369.29 total disability payment.

15. Here, the record contains evidence that Claimant would have worked from four to eight hours in the Sears position, depending on her availability and the availability of her co-workers. (R.R. at 206a–11a.)

16. The record indicates that Claimant drove to Sears and to other places further from her home in response to Employer's numerous job referrals. (R.R. at 78a–80a.)

17. Bleier testified that it is reasonable for persons like Claimant to travel 22 miles for a part-time minimum-wage job. (R.R. at 324a–25a.)

Quite clearly, Claimant had to arrange and pay for child care in order to work prior to her injury; therefore, Claimant cannot complain now that babysitting difficulties prevent her from accepting employment at Sears.

Because the WCJ failed to make necessary findings of fact, we vacate the order of the WCAB and remand this case to the WCAB for remand to a WCJ to take additional evidence, as needed, and to make additional findings of fact and conclusions of law.

### *ORDER*

AND NOW, this 21st day of April, 1997, the order of the Workmen's Compensation Appeal Board, at A95–2638, dated June 12, 1996, is vacated, and this case is remanded to the Workmen's Compensation Appeal Board for remand to a Workers' Compensation Judge to take additional evidence, as needed, and to make additional findings of fact and conclusions of law.

Jurisdiction relinquished.